**SO ORDERED.**

**SIGNED this 29 day of June, 2011.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                                    CASE NO.

**DAVID BRIAN COYLE**                                                    10-03476-8-SWH

       **DEBTOR**

### ORDER ALLOWING MOTION TO DISMISS

The matter before the court is the bankruptcy administrator's motion, pursuant to 11 U.S.C. § 707(b)(3), to dismiss this case for abuse. A hearing took place in Raleigh, North Carolina, on May 12, 2011. For the reasons that follow, the case will be dismissed unless the debtor converts the case to one under chapter 13.

David Brian Coyle filed a petition for relief under chapter 7 of the Bankruptcy Code on April 30, 2010. The debtor's Schedule I indicates that he receives gross monthly wages of $6,082.80. After payroll deductions for taxes and insurance, the debtor's net monthly take home pay is $4,837.30. Schedule I further indicates that the debtor's income is commission-based and therefore fluctuates, but that the debtor expects his income to increase as the economy improves. Schedule J indicates that the debtor's monthly automobile payment is $1,212. Monthly housing expenses include $1,450 in rent or mortgage payments, HOA dues of $66, and property taxes of $245.

On September 27, 2010, the bankruptcy administrator filed the present motion to dismiss, contending that the debtor has the ability to pay a meaningful dividend to creditors and that the totality of the debtor's financial circumstances demonstrates abuse. Specifically, the bankruptcy administrator argues that the debtor's monthly automobile payment of $1,212 is excessive, as it is not necessary or reasonable, given the debtor's financial circumstances. In addition, because the debtor is single with no dependents, the bankruptcy administrator contends that the debtor could find more reasonable housing than his $325,000 home. In response, the debtor asserts that he would only be able to make payments on his unsecured debts if he surrendered his house and vehicle, thereby defaulting on secured debts to pay other debts. According to the debtor, this is contrary to the Bankruptcy Code, which generally facilitates the payment of secured claims before others. The debtor contends that even if his ability to pay is a factor, the means test provides the best guidance in that regard, and here, the means test did not yield a presumption of abuse.

The debtor testified that he is a salesperson at a car dealership, with income that varies from month-to-month because it is largely commission-based. The parties stipulated as to the debtor's annual income for the past several years as follows: $100,000 in 2008, $77,100 in 2009, and $101,000 in 2010. The debtor testified that his 2011 year-to-date income is approximately $43,000, and that he expects to finish the year at slightly less than his 2010 income. The debtor purchased his current vehicle, a 2008 Land Rover Range Rover, in September of 2008 for approximately $68,000, which included the trade-in value of his previous 2008 Range Rover.[1] In the two to three years prior to that, the debtor owned two Mercedes, a Porsche, and two Jaguars, all for short periods

---

[1] The debtor testified that he traded in his first 2008 Range Rover so quickly because it had a defective part that had not been adequately repaired despite numerous attempts by the dealership service department.

2

of time. The debtor further testified that he sought bankruptcy protection because of the economic downturn in 2009, which caused a significant reduction in his income and rendered him unable to meet his financial obligations.

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, § 907 (April 20, 2005) ("BAPCPA"), § 707(b) provided for dismissal of a chapter 7 case if the filing constituted "substantial abuse." The Fourth Circuit, in considering whether abuse existed, adopted a "totality of the circumstances" test, consisting of the following factors:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
>
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
>
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
>
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
>
> (5) Whether the petition was filed in good faith.

See In re Green, 934 F.2d 568, 572 (4th Cir. 1991). A debtor's ability to pay was often a "heavily-weighted" consideration. In re Gilligan, Case. No. 06-00885-5-ATS (Bankr. E.D.N.C. Jan. 24, 2007). Post-BAPCPA, § 707(b) provides that the court must consider "(A) whether the debtor filed the petition in bad faith; or (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3). Although the statute has been modified by BAPCPA, pre-BAPCPA cases such as Green remain instructive to the § 707(b)(3) analysis. See, e.g., Calhoun v. U.S. Tr., 2011 U.S. App. LEXIS 9037 (4th Cir. May 3, 2011)

(finding the totality of the circumstances analysis still applicable in determining whether abuse is present under § 707(b)(3), and identifying the Green factors in this regard); In re Mitchell, Case No. 10-00825-8-SWH (Bankr. E.D.N.C. Dec. 22, 2010) (citations omitted) (determining that Green remains applicable).

Counsel for the bankruptcy administrator questions whether the level of abuse necessary to dismiss a case has lessened since the passing of BAPCPA, given the removal from the statute of the word "substantial," which modified the word "abuse." In the most recent Fourth Circuit case involving abuse under § 707(b)(3), Calhoun v. U.S. Tr., the court acknowledged that the lower court found the Green factors instructive, yet stated that "'the underpinnings of Green have been removed' with the amendment of § 707(b)." 2011 U.S. App. LEXIS 9037. In affirming dismissal of the debtors' case, the Calhoun court concluded that it "need not make a determination as to the enduring applicability of the holding in Green," because the lower court found that the debtors "were able to pay their creditors based on the totality of the circumstances of their financial situation," finding a multitude of factors in favor of abuse. Id. Similarly, the present matter does not require such a determination, as the court concludes that abuse exists under the Green factors, under either abuse level. Based on the totality of the circumstances present in this case, the court finds that allowing the debtor relief under chapter 7 would be an abuse of that chapter.

First, the debtor's petition was not filed because of sudden illness, calamity, disability, or unemployment. The debtor was and is gainfully employed, earning an above average income. As to this debtor, the court does not consider the recent downturn in the economy to be a "calamity" that would weigh against abuse. The debtor's income suffered in 2009, but he still grossed $77,100, which should have been more than sufficient to support a single healthy person with no dependents.

4

The economic troubles of 2009 were widespread and affected a great number of people, but this debtor appears to have not only weathered the storm but emerged with his umbrella intact.

A primary factor weighing against the debtor is that the proposed monthly budget is excessive and unreasonable. The debtor's $1,200 car payment is the root of the problem, in that it far exceeds a reasonable monthly expenditure for transportation. Although the debtor sells cars, the evidence does not show that a luxury sport-utility vehicle is in any way needed to perform the debtor's job. Counsel for the bankruptcy administrator represents that the debtor's car payment is more than twice the IRS Local Standard of approximately $500. In addition, the bankruptcy administrator represents that if the debtor had, for example, a $600 car payment, the debtor would have "failed" the means test, resulting in a presumption of abuse. The court considered the debtor's testimony that he wanted to sell the vehicle but did not because the debt exceeds the value. However, this sympathetic circumstance is far outweighed by the conscience-shocking nature of a $1,200 car payment. Chapter 7 debtors are often faced with the need to surrender undersecured assets and the debtor offered no evidence that he was unable to secure a less expensive vehicle. Although the court does not desire to implement a bright-line rule as to luxury car payments, it is apparent that courts often dismiss cases where debtors drive luxury vehicles while seeking to discharge debts. In re Mack, 2004 Bankr. LEXIS 499 at *2 (Bankr. C.D. Ill. 2004) (collecting cases). In addition, the debtor's housing costs are somewhat excessive. Counsel for the bankruptcy administrator did not press this point at the hearing, but in the court's view, housing costs of approximately $1,761 per month push the limits of reasonableness for a individual with no dependent family members. According to the debtor's petition, the IRS local standard for housing at the time of the debtor's filing was $1,072. A debtor's budget may be considered excessive or

5

unreasonable because of significant housing expenses. See In re Crink, 402 B.R. 159 (Bankr. M.D.N.C. 2009). In making such a determination, "due regard should be given to the size of the family, their reasonable needs, and the cost of alternative housing." Id. While "a court should not unduly depreciate a debtor's long-standing, traditional ties to a homestead," the evidence does not show that the home has sentimental value, as the debtor purchased the home approximately three-and-a-half years ago. Id. The debtor testified that his home is 2,150 square feet, and that he is the sole resident of his household. Considering the current size of the debtor's household, this home may be larger than necessary for one person. At some point prior to owning this home, the debtor rented a 1,400-1,500 square foot condominium for $900 per month. This tends to show that less expensive housing is suitable for and available to the debtor.

The final consideration weighing against the debtor is his apparent ability to repay creditors. According to the bankruptcy administrator, if the debtor obtained more affordable transportation or housing, he would be able to pay a dividend to creditors. The debtor's income has remained steady and substantial since the petition was filed. The debtor testified that based on his current income, he has the ability to meet his financial obligations. The court agrees with the bankruptcy administrator that with some belt-tightening and priority reorganizing, the debtor could repay something to his creditors and would likely be able to fund a chapter 13 plan.

The court has considered the remaining factors of the Green analysis, and finds that some weigh in favor of the debtor, but none outweigh the factors supporting a finding of abuse. The debtor's schedules and statements appear to accurately reflect his financial condition. As to whether the debtor made consumer purchases far in excess of his ability to repay, the court finds that the debtor probably could afford his car and home when purchased, as neither purchase was made on

the eve of bankruptcy. The timing of these purchases also goes against a finding that the debtor filed the petition in bad faith.

Although the debtor's ability to pay his creditors is certainly a factor contributing to the court's finding of abuse, the court's decision is not based on that factor alone. As many other courts have observed, an ability to pay is not per se abuse. See, e.g., In re Green, 934 F.2d 568, 571-572 (4th Cir. 1991); In re Crink, 402 B.R. at 173 (Bankr. M.D.N.C. 2009). Rather, something more than an ability to pay must tip the scale to warrant a finding of abuse under § 707(b)(3). In this case, the debtor chose luxury over paying his creditors. His choice of transportation and housing exceeds what is reasonably necessary to suit a similarly situated debtor's needs. As stated in a similar matter involving a luxury home and vehicles, "[w]hile the Debtor is not continuing to live in a castle in Spain at the expense of his unsecured creditors, see Bacardi, 2010 Bankr. LEXIS 3, 2010 WL 54760 at *5 n.2, he is living larger than reasonably necessary and has not attempted to reduce his expenses or lifestyle." In re Roppo, 442 B.R. 888, 896 (Bankr. N.D. Ill. 2010). Similarly, the debtor in the present case is essentially asking the court to allow him to keep a luxury vehicle and large home at the expense of his unsecured creditors. The court views this scenario as abuse under § 707(b)(3).

Based on the totality of the circumstances of the debtor's financial situation, allowing the debtor relief under chapter 7 would be an abuse of that chapter. The court will delay a final determination in this case for 30 days to allow the debtor the opportunity to convert the case to chapter 13. If not converted within 30 days, the case will be dismissed for abuse pursuant to § 707(b)(3).

**SO ORDERED**.

**END OF DOCUMENT**